# In the United States Court of Federal Claims

No. 23-1884

Filed: June 27, 2024

|  |  |
|---|---|
| JOHN ARTHUR BOULTBEE, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant*. | ) |

*John Arthur Boultbee*, pro se.

*Christopher A. Berridge*, Trial Attorney, Commercial Litigation Branch, Civil Division, Washington, D.C., *William J. Grimaldi*, Assistant Director, with whom were *Brian M. Boynton*, Principal Deputy Assistant Director, *Patricia M. McCarthy*, Director, for Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

Following his conviction on various criminal charges, the United States District Court for the Northern District of Illinois sentenced John Arthur Boultbee to prison. His sentence also included a monetary assessment, fines, restitution, and forfeiture that totaled nearly $45,000. Boultbee paid some of these amounts. Years later, the president granted Boultbee a full and unconditional pardon.

Boultbee now sues for the return of the monetary portion of his sentence based on his pardon, arguing that the pardon entitles him to the refund of the money he's paid due to his conviction. Alternatively, he argues that he does not need to identify a money-mandating statute because the money was taken from him pursuant to a statute, that the government breached an implied-in-fact contract to refund his money, or that he satisfies the requirements for compensation for an unjust conviction under 28 U.S.C. § 1495. The Government moves to dismiss for lack of subject matter jurisdiction, arguing that Boultbee has failed to identify a money-mandating source of law that entitles him to any refund of the money he paid because of his conviction. Because none of Boultbee's asserted grounds for jurisdiction in this court can support jurisdiction in this case, the court dismisses this action for lack of subject matter jurisdiction.

**I.    BACKGROUND**

Boultbee was convicted of mail fraud under 18 U.S.C. § 1341 in July 2007, and resentenced in 2011.[1] The Northern District of Illinois sentenced him to time-served, ordered him to pay a $100.00 assessment, $500.00 in fines, $15,000 in restitution, and forfeit $28,566.00. ECF No. 1 at 2; Am. J. as to John A Boultbee, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Mar. 24, 2011), ECF No. 1182.[2] Boultbee alleges he paid these amounts in full. ECF No. 1 at 2.

On December 23, 2020, President Trump granted Boultbee a full and unconditional pardon. *Id.*; Executive Grant of Clemency as to John A Boultbee, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Dec. 23, 2020), ECF No. 1232. As a result, the United States notified the district court that Boultbee satisfied the judgment, and the government released a judgment lien it had recorded against Boultbee. Satisfaction of Judgment & Release of Judgment Lien, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Oct. 24, 2022), ECF No. 1234. Boultbee requested a refund of the assessment, fines, restitution, and forfeiture he had paid, which the Department of Justice received on November 29, 2022, and acknowledged receipt on February 23 and March 16, 2023. ECF No. 1 at 2. Boultbee wrote again to the DOJ on July 14, 2023, seeking an update on the status of his request to which he never received a reply. *Id.*

Boultbee seeks a "refund of assessment, fines, forfeiture and restitution," totaling $44,166.00 as well as "reasonable costs incurred in pursuing this claim . . . ." *Id.* Boultbee alleges this amount "has been wrongfully withheld" by the Government after his pardon. *Id.* The Government moves to dismiss under Rule 12(b)(1) and alternatively under Rule 12(b)(6). ECF No. 7.

## II.    STANDARD OF REVIEW

---

[1] Boultbee appealed his 2007 conviction to the Seventh Circuit and then the Supreme Court; the Supreme Court vacated the Seventh Circuit's affirmance and remanded the case to the Seventh Circuit for further proceedings. *Black v. United States*, 561 U.S. 465, 474 (2010). The Seventh Circuit vacated the sentences and remanded to the district court for resentencing. *United States v. Black*, 625 F.3d 386, 394 (7th Cir. 2010). The Northern District of Illinois entered its amended judgment in March 2011. Am. J. as to John A Boultbee, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Mar. 24, 2011), ECF No. 1182. Boultbee appealed the 2011 judgment. Notice of Appeal by John A Boultbee, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Apr. 4, 2011), ECF No. 1183. And he subsequently filed a petition for writ of certiorari which the Supreme Court denied. *Black v. United States*, 563 U.S. 1028 (2011). Shortly after, the Seventh Circuit dismissed this appeal when Boultbee filed a motion to voluntarily dismiss the case. Order, *United States v. John A. Boultbee*, No. 11-1789 (7th Cir. July 6, 2011), ECF No. 24-1.

[2] The court may consider Boultbee's prior litigation. Under a Rule 12(b)(1) motion to dismiss the court is allowed to look to "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

Subject matter jurisdiction over a case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). If the court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3). Subject matter jurisdiction presents a question of whether the case is encompassed by the court's "general power to adjudicate in specific areas of substantive law . . . ." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999). The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

When deciding a Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). But "[i]f jurisdictional facts are disputed, the plaintiff may not rest on mere allegations; instead, it must produce 'competent proof' sufficient to support its allegations." *JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 699 (2021) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936)). In cases where the jurisdictional facts are disputed "the Court is not strictly confined to the pleadings and may 'find facts on its own.'" *Id.* at 699 (citing *Meyers v. United States*, 96 Fed. Cl. 34, 43 (2010)). Complaints filed by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But the leniency afforded to pro se plaintiffs' pleadings does not relieve them of jurisdictional requirements. *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

### III. DISCUSSION

#### A. Boultbee has failed to establish jurisdiction.

Under the Tucker Act, this court has subject matter jurisdiction over "any claims against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). But the Tucker Act does not create a substantive cause of action, and "in order to invoke the jurisdiction of the Court of Federal Claims under the Tucker Act, a plaintiff must also rely on a right to money damages found in the Constitution, a statute or a government regulation, or a contract." *Ont. Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004). To establish jurisdiction, a plaintiff must identify a specific "separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citations omitted).

Boultbee's asserted bases for jurisdiction are somewhat scattershot. In his complaint, Boultbee asserts jurisdiction under the Tucker Act, seeking a refund of the money he paid pursuant to his conviction that "has been wrongfully withheld" by the DOJ after Boultbee received a presidential pardon. ECF No. 1 at 2. He argues his claim is one for return of money paid to the Government "in that the amounts paid for forfeiture, assessment and fine were paid to the Government 'directly' and the amount paid as restitution was paid to the Government 'in effect' and it is those amounts that Plaintiff seeks to have refunded." ECF No. 8 at 4. But Boultbee expressly disclaims that his claim is an illegal exaction claim. Rather, he asserts that

3

his claim is primarily founded upon acts of Congress and alternatively based on an implied contract with the United States. ECF No. 12 at 2-3. While Boultbee disputes the Government labeling his claim as a claim for damages for unjust conviction, ECF No. 8 at 2, he also claims that his pardon is proof of innocence and, thus, this "indicates that the Court has jurisdiction" on this theory as well. ECF No. 12 at 6; *see also* ECF No. 17 at 13 (Boultbee asserts his "claim is principally a claim that is founded upon an Act of Congress: second it is pursuant to an implied contract . . . and, finally, it is for unliquidated damages not sounding in tort.").

Boultbee essentially asserts four bases for jurisdiction: 1) the Constitution's presidential pardon power—U.S. Const. art. II § 2; 2) an Act of Congress; 3) an implied contract; and 4) 28 U.S.C. § 1495. These arguments will be addressed in turn.

1. <u>The pardon power is not a basis for jurisdiction in this court.</u>

    a) *The pardon power is not money mandating when the money paid pursuant to a criminal conviction has vested in a third party.*

The Constitution provides that "[t]he President shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." U.S. CONST. art. II, § 2. "A pardon is an act of grace by which an offender is released from the consequences of his offence." *Knote v. United States*, 95 U.S. 149, 153 (1877). A pardon blots out the effects of the offence, "removes the penalties and disabilities, and restores [the offender] to all his civil rights . . . ." *Ex parte Garland*, 71 U.S. 333, 380 (1866). And because a pardon removes all effects of the offence, it requires the return of property lost or money paid as part of the criminal judgment. *Osborn v. United States*, 91 U.S. 474, 476 (1875).

But this ability to recoup property lost pursuant to a criminal conviction is a limited one. Pardons do not "affect any rights which have vested in others directly by the execution of the judgment for the offence, or which have been acquired by others whilst that judgment was in force." *Knote*, 95 U.S. at 154. Consequently, pardons cannot "restore . . . property or interests vested in others in consequence of the conviction and judgment." *Ex parte Garland*, 71 U.S. at 381; *Ill. C.R. Co. v. Bosworth*, 133 U.S. 92, 103-04 (1890). Therefore, whether a grantee of a pardon may recover property lost due to an offence depends on whether the property rights have vested in another party. *Osborn*, 91 U.S. at 476 (affirming that "a pardon was to restore to its recipient all rights of property lost by the offence pardoned, unless the property had . . . become vested in other persons"); 59 Am. Jur. 2d Pardon and Parole § 58 ("A pardon does not restore one to property or interests that have vested in others in consequence of the conviction and judgment.").

A property interest is considered vested once the property has "passed out of the jurisdiction of the officer or tribunal" to another party, including the U.S. Treasury. *Knote*, 95 U.S. at 154. Indeed, "if the proceeds have been paid into the treasury, the right to them has so far become vested in the United States that they can only be secured to the former owner of the property through an act of Congress." *Id.* This is because of the Constitution's provision that funds may only be drawn from the treasury by an appropriation. U.S. CONST. art. I, § 9, cl. 7. Thus, if the property has vested, the grantee of a pardon has no recourse and may not recoup the property lost. But, if the property has not vested and "remain[s] under control of the Executive,

4

or of officers subject to his orders, or are in the custody of the judicial tribunals, the property will be restored or its proceeds delivered to the original owner, upon his full pardon." *Knote*, 95 U.S. at 154.

Pardon law is well established, and the law remains the same today as it did in *Knote*. For example, in *Fordham v. Georgia Department of Administrative Services*, No. 23-11214, 2023 WL 5747709, at *2 (11th Cir. Sept. 6, 2023), *cert. denied sub nom. Fordham v. GA Dep't of Admin.*, No. 23-585, 2024 WL 674753 (U.S. Feb. 20, 2024), the Eleventh Circuit explained:

> [T]he Supreme Court has long held that, as long as proceeds from a restitution order remain in the court's possession, they fall within a pardon's grasp . . . . But the federal government can only release what it holds, and here, it holds nothing. The district court transferred all restitution monies to the victims, so the property rights to those funds have fully vested . . . .

(cleaned up). The Eleventh Circuit affirmed the dismissal of plaintiff's complaint for failure to state a claim because all money paid by the plaintiff had vested in third parties or the U.S. Treasury. *Id.* at *3. The district court had concluded: "the United States Supreme Court has clearly foreclosed the notion that a presidential pardon can interfere with the vested property rights of third parties . . . . The Court cannot avoid the collective force of Supreme Court precedent." *Fordham v. Ga. Dep't of Admin. Servs.*, No. CV 122-121, 2023 WL 2616926, at *2 (S.D. Ga. Mar. 23, 2023), *aff'd*, No. 23-11214, 2023 WL 5747709 (11th Cir. Sept. 6, 2023). Thus, it is clear the pardon power cannot get Boultbee property that vested in third-parties.

Boultbee asserts that *Knote* and the above cases "are not as definitive as the decision of the Supreme Court in *Nelson v. Colorado*." ECF No. 17 at 2 (citing *Nelson v. Colorado*, 581 U.S. 128 (2017)). According to Boultbee, *Nelson* stands for the proposition that "restitution, even if paid to third parties, was to be refunded" when one is pardoned or has a conviction overturned. ECF No. 17 at 4. He asserts that "[w]ithout specifically stating it, the Court clearly rejected the notion that money paid to a third party precluded a refund by the state."[3] *Id.* Boultbee also claims that in *Nelson* "[t]he Court made it clear that, in the absence of constitutional legislation, the payments [made to the state] must be refunded" and that thus he is entitled to a refund. *Id.* at 5.

Boultbee misses the point of *Nelson*. To begin, *Nelson* deals with cases where the convictions are overturned on appellate review; it says nothing about when a conviction is pardoned.[4] *Nelson* addressed Colorado statutes regarding the retention of criminal fines after a conviction was reversed by an appellate court. Those statutes allowed the state to retain "conviction-related assessments unless and until the prevailing defendant institutes a discrete civil proceeding and proves her innocence by clear and convincing evidence." *Nelson*, 581 U.S.

---

[3] Boultbee relies mainly on quotes from Justice Alito's concurrence and Justice Thomas's dissent for this assertion. ECF No. 17 at 3-4.

[4] Boultbee's 2011 conviction was never overturned on appellate review. Order, *United States v. John A. Boultbee*, No. 11-1789 (7th Cir. July 6, 2011), ECF No. 24-1.

at 130.  The Supreme Court, using the *Matthews* balancing test, found this statutory scheme offended "the Fourteenth Amendment's guarantee of due process."  *Id.*  But *Nelson* involved individuals whose convictions were invalidated on appellate review, not pardons.  It does not overturn or even undermine the well-established precedent regarding the effect of a pardon with regard to property that vested in third parties.

The case law is clear and *Nelson* does nothing to change it.  Pardons cannot "restore . . . property or interests vested in others in consequence of the conviction," *Ex parte Garland*, 71 U.S. at 381, and, therefore, if the property Boultbee lost has vested in third parties or the Treasury, he may not recoup it.  *Knote*, 95 U.S. at 154; *Osborn*, 91 U.S. at 477.  Because the pardon power is not money-mandating when the property at issue has vested in third parties, this court does not have jurisdiction over Boultbee's claims that seek a refund for monies already vested in third parties or the Treasury.

>  *b)  To the extent Boultbee's property has not vested in third parties, this court does not have jurisdiction to order a refund of the monies paid.*

To the extent the money Boultbee paid has not vested in third parties, the money would necessarily be sitting in the Northern District of Illinois.  *See Knote*, 95 U.S. at 154 (holding a property interest is vested once it has "passed out of the jurisdiction of the officer or tribunal").  Thus, Boultbee essentially asks this court to order the district court to refund him money held by that court.  But this court does not have the power to compel the Northern District of Illinois to do anything.  The money judgments this court issues come from the Judgment Fund, a congressionally appropriated fund that comes out of the U.S. Treasury.  28 U.S.C. § 2517.  To the extent the money is held by the Northern District of Illinois, Boultbee is not asking this court to issue a money judgment from the Treasury (which the precedents discussed above prohibit), but the payment from a district court's fund—and that is not within this court's power to do.  If Boultbee has a claim for a refund of money in possession of the Northern District of Illinois, Boultbee's claim is one for that court, not this one.

> 2.  <u>Boultbee fails to identify a money-mandating act of Congress that establishes jurisdiction over his claim.</u>

Boultbee also argues his claim for a refund of monies paid to the Government is within this court's jurisdiction because it is a claim "founded upon an Act of Congress."  ECF No. 17 at 13.  But Boultbee does not identify a specific money-mandating act of Congress that entitles him to a refund as is required to establish jurisdiction under the Tucker Act.  Rather, Boultbee argues he is not required to.  He cites to *Compagnie General Transatlantique v. United States*, 21 F.2d 465, 466 (S.D.N.Y. 1927), *aff'd sub nom. United States v. Compagnie Generale Transatlantique*, 26 F.2d 195 (2d Cir. 1928) and *United States v. Emery, Bird, Thayer Realty Co.*, 237 U.S. 28 (1915) in support of his claim.  ECF No. 12 at 3-4.  And Boultbee alleges:

> The message from those cases and many that follow them is that, for a claim to be founded upon an act of Congress, the act or acts in question do not need to provide for the repayment of an amount collected by the government.  All that is necessary is that the amount was collected pursuant to a law of Congress.

ECF No. 12 at 4.  According to Boultbee, "[t]he fines, assessments, forfeiture and restitution claimed by Plaintiff were all collected pursuant to laws of Congress and therefor, this court has jurisdiction in this case." *Id.*

Boultbee misunderstands the caselaw.  These cases primarily concern illegal exaction claims.  *United States v. Emery, Bird, Thayer Realty Co.* involved a claimant seeking to recover taxes paid under protest.  *Compagnie Gen. Transatlantique v. United States*, a case from the Southern District of New York that is not binding precedent on this court, involved plaintiffs seeking to recover fines paid relating to immigration laws.  It is true that "a plaintiff need not identify a money-mandating provision of law to invoke this court's jurisdiction for an illegal exaction claim." *Gulley v. United States*, 150 Fed. Cl. 405, 419 (2020) (citing *Perry v. United States*, 149 Fed. Cl. 1, 32 (2020)).  Boultbee, however, expressly disclaims bringing an illegal exaction claim.  ECF No. 12 at 2.  Rather, Boultbee admits he "has not claimed that the moneys paid to the U.S. government were illegally extracted.  In fact they were quite legally extracted." ECF No. 12 at 2.  Even if the court were to construe his claim as an illegal exaction claim, he would fare no better.  To have an illegal exaction claim, Boultbee must seek to recover "money that was improperly paid, exacted, or taken [by the Government] . . . in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citation omitted).  Here, the money was paid pursuant to a conviction and judgment that has never been overturned.

Because this is not an illegal exaction claim, Boultbee is required to identify a money-mandating source of law to establish this court's jurisdiction.  *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327-29 (2020).  A statute is money mandating if it can "fairly be interpreted as mandating compensation by the Federal Government." *Id.* at 1329 (citation omitted).  In other words, "the alleged source of the substantive right to money damages must be '*reasonably amenable* to the reading that it mandates a right of recovery in damages . . . .'" *Steinberg v. United States*, 90 Fed. Cl. 435, 442 (2009) (citing *Fisher,* 402 F.3d at 1174) (emphasis in original).  Boultbee fails to identify such a statute.

Thus, Boultbee has failed to identify an act of Congress that establishes jurisdiction over his claim in this court.

### 3.    Boultbee's implied contract argument is frivolous.

Boultbee next argues that he had "an implied contract for the repayment" with the United States.  ECF No. 17 at 14.  He alleges "it was reasonable . . . to conclude that there was an implied contract that, should his conviction be overturned[5] at any time, his payments also would be refunded" because his co-defendant Peter Atkinson who paid similar amounts received a refund, and Boultbee knew this when he made his payments.  ECF No. 12 at 5.  Moreover, according to the Boultbee, his implied contract argument is bolstered by the fact that he

---

[5] Given the lenity with which the court reviews pro se filings, the court reads this argument to state that Boultbee concluded that he had an implied contract for a refund if he were pardoned, not if his conviction were overturned because Boultbee's conviction was not overturned.

7

"voluntarily paid the amounts" and that at the time he paid the amounts he was "judgement-proof" under Canadian law. ECF No. 17 at 14-15. Boultbee is wrong on both counts.

Boultbee's contract claim is frivolous. No implied contract for a refund is created when a defendant pays fines, assessment, and restitution pursuant to a criminal judgment—even if the individual believes he may receive a refund in the event of a pardon. An implied contract "requires findings of: 1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance" and "[w]hen the United States is a party, a fourth requirement is added: the Government representative whose conduct is relied upon must have actual authority to bind the government in contract." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (cleaned up). Boultbee does not even attempt to establish any of these elements. He only alleges it was reasonable for him to conclude he might get a refund in the future. And Boultbee's assertion that he "voluntarily paid the amounts" is inaccurate. Paying fines, assessment, restitution, or forfeiture pursuant to a criminal conviction is not voluntary.

As the Government points out, *Knote* is also instructive on this issue. ECF No. 16 at 6. In *Knote*, the Supreme Court dealt with a similar claim by a grantee of a pardon resting "upon a supposed implied contract to pay to the claimant the money received as the proceeds of the forfeited property." *Knote*, 95 U.S. at 156. The Court in *Knote* explained "[t]o constitute such a contract, there must have been some consideration moving to the United States; or they must have received the money, charged with a duty to pay it over; or the claimant must have had a lawful right to it when it was received . . . ." *Id.* at 156-57. But the Court held there was no implied contract because "there was no consideration moving to the United States; they were charged with no duty in respect to the money; there was no legal claim by any one to it when received into the treasury; and no law since has required it to be paid to the claimant." *Id.* at 157. The same is true here.

Although this court generally has jurisdiction over claims based on government contracts, this court does not have jurisdiction over contract claims that "are frivolous, wholly insubstantial, or made solely for the purpose of obtaining jurisdiction." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341 (Fed. Cir. 2021); *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source"); *Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 257 (2024) ("for a contract claim, subject matter jurisdiction under 28 U.S.C. § 1491(a) requires no more than a non-frivolous allegation of a contract with the government.") (cleaned up). Because Boultbee's implied contract claim is frivolous, this court does not have jurisdiction over it.[6]

### 4. Boultbee does not meet the jurisdictional requirements for a claim under 28 U.S.C. § 1495.

---

[6] Even if this court had jurisdiction, the court would dismiss the claim under RCFC 12(b)(6) for failure to state a claim.

Under 28 U.S.C. § 1495, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." And 28 U.S.C. § 2513(a)(1) dictates that "[a]ny person suing under section 1495 of this title must allege and prove that . . . he has been pardoned upon the stated ground of innocence and unjust conviction . . . ." The requirements of 28 U.S.C. § 2513 are "jurisdictional and therefore must be strictly construed." *Moore v. United States*, 230 Ct. Cl. 819, 820 (1982).[7] Consequently, for Boultbee to establish jurisdiction under this statute, he "must furnish this court with a copy of his pardon on the explicitly stated grounds of innocence and unjust conviction . . . . No other evidence may be considered under the statute." *Id.* at 820; *see also Brown v. United States*, 42 Fed. Cl. 139, 142 (1998), *aff'd*, 215 F.3d 1347 (Fed. Cir. 1999) (holding when a plaintiff is "unable to demonstrate that his conviction has been reversed or set aside *on the grounds of innocence*, he has failed to meet the threshold for any potential recovery under these statutory provisions") (emphasis added).

According to the Government, "[b]ecause Mr. Boultbee's pardon was not granted on the stated ground of innocence, the pardon is insufficient to confer on the Court subject-matter jurisdiction over his claims and his complaint must be dismissed pursuant to RCFC 12(b)(1)." ECF No. 7 at 6. While Boultbee counters that his "claim is for a refund of moneys paid and is not a claim for damages," ECF No. 8 at 2, he also asserts in the context of the Government's argument on 28 U.S.C. § 1495 that "his request for pardon was based solely on the fact that there was no evidence of his guilt presented at trial. Since, based on that request, the pardon was granted, it follows that the grant must be accepted as proof of innocence . . . . this also indicates that the Court has jurisdiction." ECF No. 12 at 5-6.

Boultbee is incorrect. 28 U.S.C. § 2513(a)(1) requires a plaintiff seeking compensation for an unjust conviction to "prove that . . . he has been pardoned upon the *stated ground of innocence* and unjust conviction . . . ." (emphasis added). The pardon in this case makes no such representation, which precludes Boultbee's claim because "[p]roof of the requisite facts shall be by . . . pardon wherein such facts are alleged to appear, and other evidence thereof shall not be considered." *Id.* § 2513(b). Thus, this court may not infer that the pardon was granted for actual innocence; rather, a pardon for actual innocence must actually state that it is based on actual innocence. *Moore*, 230 Ct. Cl. at 820.

Boultbee has failed to establish that this court has jurisdiction over his claim for unjust conviction.

---

[7] There are several cases holding that compliance with 28 U.S.C. § 2513 is a jurisdictional requirement for claims for unjust conviction under 28 U.S.C. § 1495. *E.g.*, *Brewer v. United States*, No. 20-1209, 2021 WL 655432, at *2 (Fed. Cl. Feb. 19, 2021) (collecting cases), *aff'd*, No. 2021-1872, 2023 WL 2233717 (Fed. Cir. Feb. 27, 2023). There are also cases dismissing unjust conviction claims for failing to state a claim when the plaintiff does not provide a certificate of innocence as required by § 2513. *Id*. at *3 (collecting cases). In this case, the outcome is the same whether considered under RCFC 12(b)(1) and 12(b)(6). *Brewer v. United States*, No. 2021-1872, 2023 WL 2233717, at *2 (Fed. Cir. Feb. 27, 2023) (affirming dismissal of an unjust conviction claim when the plaintiff failed to obtain a certificate of innocence and could not prove his case).

## B. It is not in the interest of justice to transfer this case.

Boultbee requests this court "transfer this claim pursuant to 28 U.S. Code § 1631 to the court that it determines to be the correct court" if it determines it lacks jurisdiction. ECF No. 17 at 15. 28 U.S.C. § 1631 provides that when a court finds it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . ." Thus, this court can transfer the case under § 1631 if "(1) the transferring court lacks jurisdiction, (2) jurisdiction lies in another court, and (3) transfer is in the interest of justice." *Martin v. United States*, 169 Fed. Cl. 342, 345 (2024). And "[t]he party seeking transfer has the burden to identify the proposed transferee court and show that jurisdiction would be proper there." *Ross v. United States*, 155 Fed. Cl. 792, 798 (2021) (cleaned up). Whether to transfer a case is a decision that "rests within the sound discretion of the transferor court." *Martin*, 169 Fed. Cl. at 346 (cleaned up).

It is clear this court lacks jurisdiction. Whether jurisdiction lies in another court is not as clear—Boultbee has not identified such a court. If Boultbee had a cognizable claim, it seems that the sentencing court, the Northern District of Illinois, would have jurisdiction over the claim. As the Government points out, that court issued several judgments and orders throughout the criminal case and "accept[ed] notice of satisfaction of judgment and release of lien filed by USAO-NDIL in October 2022, nearly two years after the pardon was issued." ECF No. 16 at 5 (citing Satisfaction of Judgment & Release of Judgment Lien, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Oct. 24, 2022), ECF No. 1234). And in the final order of forfeiture "the Court ordered that it 'shall retain jurisdiction in this matter to take additional action . . .', action which would logically include ordering the U.S. Marshals Service or USAO-NDIL to return funds collected during the criminal case or through his amended judgment back to Mr. Boultbee, had they not yet vested." *Id.* (citing Final Order of Forfeiture as to Conrad M Black, John A Boultbee, Peter Y Atkinson, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Aug. 29, 2011), ECF No. 1225).

Even assuming the Northern District of Illinois would have jurisdiction over Boultbee's claim, this court concludes that transfer is not in the interest of justice. Transfer is in the interest of justice if the underlying claims "are nonfrivolous and as such should be decided on the merits." *Martin*, 169 Fed. Cl. at 345 (2024) (citing *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987)). And a court "may decline to transfer the case '[i]f such transfer would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Id.* at 346 (citing *Spencer v. United States*, 98 Fed. Cl. 349, 359 (2011)).

In this case, this court asked the parties for supplemental briefing regarding the effect of a pardon on money paid by an individual convicted of a crime. ECF No. 15. In addition, for the *sole* purpose of considering transfer under § 1631, the court asked the parties whether any fines, restitution, or penalties Boultbee paid remained with the Northern District of Illinois. If no such funds are present there, then the transfer would appear a needless exercise.

According to the Government, "all funds paid by Mr. Boultbee had long-vested in third parties (or had not yet been paid by Mr. Boultbee) at the time of his pardon, there were no funds in the possession of the Government." ECF No. 16 at 1. The Government submitted the ledgers

10

of the U.S. Attorney's Office for the Northern District of Illinois ("USAO-NDIL") that demonstrate that the fines, assessment, and restitution payments had vested either in the Treasury or in a third party.  The Government explains that Boultbee made his "final payment on his judgment . . . on June 29, 2009."  *Id.* at 3.  Further, the USAO-NDIL "holds the payment for thirty days and then remits the payment to either the U.S. Treasury or to a person to whom restitution is owed," meaning that all the funds Boultbee paid had vested either in the U.S. Treasury or a third-party.  *Id.* at 3-4.  Boultbee was jointly liable with his co-defendants, one of whom had assets held by the U.S. Marshals that covered the amount of forfeiture owed by Boultbee.  Thus, when Boultbee paid the forfeiture, the Northern District of Illinois ordered those funds paid to the co-defendant (Mr. Black) whose funds were held to cover Boultbee's forfeiture.  *Id.* at 2-3 (citing Final Order of Forfeiture as to Conrad M Black, John A Boultbee, Peter Y Atkinson, *United States v. John A. Boultbee*, No. 05-727-2 (N.D. Ill. Aug. 29, 2011), ECF No. 1225).  From the USAO-NDIL ledgers and the district court forfeiture order, it is clear all Boultbee's payments had passed out of the district court to either individuals or the U.S. Treasury by 2011.  Therefore, Boultbee's fines, penalties, and forfeiture vested in third parties well before Boultbee received his pardon in 2020.  Because the funds are no longer held by the Northern District of Illinois, the court concludes that transfer to that court is not in the interest of justice.  That said, if Boultbee wishes to file an action in another court, he is free to do so.

## IV.     CONCLUSION

For the foregoing reasons, the court GRANTS the Government's motion to dismiss for lack of subject-matter jurisdiction, ECF No. 7.  The court directs the Clerk's Office to enter judgment accordingly.

It is so ORDERED.

s/ Edward H. Meyers<br>
Edward H. Meyers<br>
Judge